DECIDED AUGUST 31, 1928.

## 18671.  NEWBERRY v. CITY OF MACON.

DECIDED AUGUST 31, 1928.

*J. D. Hughes,* for plaintiff.

*E. W. Maynard, Arthur Lewis,* for defendant.

BELL, J.  Mrs. W. M. Newberry brought suit against the City of Macon for the homicide of her husband, alleged to have been caused by the defendant's negligence in the maintenance of a hole sixteen inches deep, about three feet wide, and several feet long, in Carling Avenue, one of the defendant's streets, and near the inter-section of that street with Rembert Avenue.  The transaction is the identical one considered by this court on demurrer in *City of Macon* v. *Newberry,* 35 *Ga. App.* 252 (132 S. E. 917), where it was held that the petition failed to set forth a cause of action and should have been dismissed on general demurrer.  It is apparent that the action was subsequently withdrawn and then renewed.  The allegations in the second petition vary but slightly from those in the original suit.

In the complaint as last filed it was alleged that the plaintiff's husband was traveling out Rembert Avenue in a one-horse wagon on his way home, and, in turning to the right into Carling Avenue around the hole and at a safe distance therefrom he would have passed by if the horse "had not shied and suddenly turned to his right,—suddenly running the right front wheel of his wagon into said hole, throwing your petitioner's husband . . out of the wagon," and causing him the injuries from which he died.  The

"said hole was dangerous, there [were] no barriers to protect your petitioner's husband from the said dangerous hole, the city was negligent in allowing said hole to remain in said street, the city knew said hole was in said streets and had actual notice of the existence in said streets of said hole, said hole was in said streets from 40·to 60 days before said injuries were sustained." The petition alleged that the plaintiff's husband was not negligent and was exercising due care, and it showed nothing as to his own knowledge of the defect.

After the introduction of evidence by the plaintiff, the court awarded a nonsuit, and the plaintiff excepted.

The evidence established the existence of the hole, about as alleged in the petition. The only witness to the accident who was introduced was C. A. Williams, who testified: "I live at 201 Carling Avenue. I remember the accident Mr. Newberry had out there on the streets. I saw it. I was sitting on my porch swing looking at it. He was coming out Rembert Avenue and turned down Carling Avenue. I couldn't tell exactly what rate of speed, just a little slow jog of a trot, his horse was going. He was going a little faster than a man can walk, something like that. When he got to the intersection of Rembert and Carling Avenue, the wheels ran into a little gulley there, the front wheel in a little gulley, and he had a spring seat on the wagon, and it sorter throwed him forward, hind one dropped in, and the next I seen was his heels up and he fell out forwards. . . Mr. Newberry was pulling the left-hand rein that guided the horse around the hole, and seemed like the horse swayed back the least bit to the right. The horse did not do it suddenly;·just as he slowed it seemed like he swayed back a little; when the horse swayed back was when the wheel dropped into the hole. I suppose if the horse had gone like Mr. Newberry was driving him it would have dropped in before, because the hole reached away out. After the horse turned, he turned at the corner like this, and after he turned the wheel dropped in, because it was on the lower corner; he had to turn the corner before the wheel dropped in. . . When I first saw Mr. Newberry coming down the street the horse was in a slow trot, there was no change in the horse's speed as I could tell. The horse did not get frightened at anything that I saw. The horse did not shy, he seemed to sway when he slackened his line. As he slackened his line to make a

turn around, the horse swayed back toward the middle of the road. He was pulling him to the left but he swayed to the right. Mr. Newberry did not appear to try to check the horse before he got to the place, the horse was going at a little slow jog of a trot. I have seen plenty of horses walk faster than he was going at that time. As far as I know the horse was gentle. I have seen Mr. Newberry driving the horse time and again. Mr. Newberry went up Dannenberg to get to where he lived, and in order to get from Dannenberg Avenue where he lived and go out toward town, he had to come up Carling Avenue and turn into Rembert where this hole was, that is always the way he came. I have seen him driving by that place time and again. The hole had been ,there for two or three months, and I have seen Mr. Newberry drive by there frequently. I saw Mr. Newberry drive by there that day, and there were two men on the seat with him. I could not tell any difference in that horse going around a curve than any other horse going around a curve. It was a perfectly natural movement on the part of the horse."

It is apparent from the evidence that the plaintiff's husband knew of the defect in the street and observed it at the particular time, but that he either carelessly waited too late to guide his horse around it or else was negligent in not guiding him properly. The petition alleged that the horse shied, implying a sudden start, as from fright. The evidence, however, showed only a swaying, as a leaning or inclining to one side rather than the other. The hole was not the cause of any action on the part of the horse, either shying or swaying. If the decedent did not control the horse, his failure to do so was not the result of the defendant's negligence. The horse was subject to control, and the decedent could easily have driven him in such manner as to have avoided the injury.

According to the evidence the horse "seemed to sway when he [the decedent] slackened his line," or "when the wheel dropped into the hole." Since it appears from the evidence that the horse was entirely subject to the will of the plaintiff, and the other facts are not materially different from those alleged in the first petition, the question of error in the granting of the nonsuit is controlled adversely to the plaintiff in error by the law of the case as laid down by this court in the former hearing. The ruling then made was as follows: "In a suit against a municipal corporation for damages

for the homicide of the plaintiff's husband, where the original petition, properly construed (most strongly against the plaintiff), shows that the deceased, while in the full possession of all his faculties and in the daytime, was driving a horse hitched to a wagon upon a street of the city, and drove into a hole sixteen inches deep, three feet wide and ten feet long, causing him to be thrown from the wagon and fatally injured, the petition sets out no cause of action, as it is apparent that he saw or should have seen such an obvious danger, and that he failed to exercise ordinary care for his protection." 35 *Ga. App.* 252. Compare *Cook* v. *Atlanta,* 94 *Ga.* 613 (19 S. E. 987); *City of Macon* v. *Jones,* 36 *Ga. App.* 799 (138 S. E. 283); *Rome Railway & Light Co.* v. *McCartha,* 36 *Ga. App.* 805 (138 S. E. 359); *Central of Georgia Ry. Co.* v. *Heard,* 36 *Ga.* 332 (136 S. E. 533); *City of Rome* v. *Phillips,* 37 *Ga. App.* 299 (2) (139 S. E. 828).

*Judgment affirmed. Jenkins, P. J., and Stephens, J., concur.*